IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| COSMETIC WARRIORS LIMITED, | |
| Plaintiff, | Civil No. 17-1475 (RBK/JS) |
| v. | **OPINION** |
| NAILUSH LLC, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This suit concerns trademark infringement and unfair competition. Plaintiff Cosmetic Warriors Limited ("CWL") brings this suit against Defendant Nailush, LLC ("Nailush") for infringing on its mark "LUSH." Presently before the Court is CWL's Motion for entry of Default Judgment under Federal Rule of Civil Procedure 55(b)(2). For the following reasons, CWL's motion is **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

CWL is a popular world-wide purveyor of high-quality, whole-ingredient bath, hair care, and beauty products. (Compl. ¶ 7.) CWL has numerous retail-stores in New Jersey and Pennsylvania, including a store in Cherry Hill, New Jersey, less than eight miles away from Nailush's location. (*Id.*) In these stores, CWL's beauty products include cosmetics for nail and cuticle care. (*Id.*) CWL also operates a spa in Philadelphia, Pennsylvania, less than ten miles from Nailush, where it offers spa services and treatments. (*Id.*) CWL has used the LUSH trademark since at least 1996 to identify its cosmetics and retail-stores. (Compl. ¶ 8.) It also uses the LUSH

mark for its spa location. (*Id.*) CWL owns United States Trademark Registrations 2,282,428, 2,853,483, 3,001,303, 3,008,685, 4,118,438, 3,102,767, and 3,987,808 ("'808 registration") for the LUSH mark. (Compl. ¶ 9.) The latest registration was granted on July 5, 2011, for hair salon services, and nailcare and manicure services. (Compl. ¶ 10.)

Nailush operates a nail salon under that name offering nailcare services and selling skincare and nailcare beauty products. (Compl. ¶ 15.) It uses the mark Nailush in advertising, social media, and its website www.nailush.us. (Compl. ¶ 16.) CWL was first alerted to Nailush's existence and use of its mark after Nailush filed an application with the U.S. Patent and Trademark Office ("USPTO") to register Nailush for nailcare services on June 9, 2015. (Compl. ¶ 15.) On September 28, 2015, the USPTO refused to register the mark because it was confusingly similar to CWL's '808 registration. (*Id.*) After Nailush appealed, the USPTO issued a final refusal to register the mark, and because Nailush failed to respond, its application was abandoned on September 26, 2016. (*Id.*) CWL contacted Nailush on November 24, 2015, and three other occasions, requesting that it cease and desist from using the mark Nailush. (Compl. ¶ 18.) Nailush never responded. (*Id.*)

Because CWL never received a response from Nailush regarding its use of the mark, CWL filed a complaint on March 3, 2017, instituting this suit for trademark infringement and unfair competition due to the confusing similarity between LUSH and Nailush. (*See* Compl.) CWL demands that Nailush: (1) be permanently enjoined from using its mark, that ownership of [www.nailush.us](www.nailush.us) be transferred to it; (2) remove the mark from all of its promotional materials and social media; (3) be required to show proof that it destroyed all of its materials; (4) cease using the mark in its registration with the State of New Jersey business and licensing board; and (5) detail in writing the steps it took to comply with the injunction. (Compl. ¶¶ A-F.) CWL also demands

damages, treble damages, statutory damages under 15 U.S.C. § 1117(d), punitive damages, reasonable attorneys' fees, and costs. (Compl. ¶¶ G-M.)

Nailush was served at its place of business on March 4, 2017. On April 4, 2017, United States Magistrate Judge Joel Schneider entered an order directing the Clerk to reject Nailush's *pro se* answer because a non-attorney may not represent a corporation. (Doc. No. 8-3 ¶ 4.) Nailush never filed a response to CWL's complaint. (*Id.*) On May 1, 2017, the Clerk entered Default against Nailush pursuant to Rule 55(a). CWL then moved for default judgment against Nailush on July 14, 2017. (Doc. No. 8).

In this motion, CWL seeks only nominal damages of $1 because it would be impossible to ascertain the amount of profits it lost due to Nailush's failure to answer. (Doc. No. 8-2, ¶ 16.) CWL requests a permanent injunction, enjoining Nailush from using Nailush and any marks confusingly similar to LUSH in its company name, trade name, license to operate, advertising, social media, signage, print materials, and otherwise. (Doc. No. 8-1.) CWL seeks an order directing the State of New Jersey to remove the Nailush mark from Defendant's cosmetology license and business registration. (*Id.*) CWL similarly seeks an order directing Facebook.com, Groupon.com and other social media sites to remove the Nailush mark from its platforms. (*Id.*) CWL asks this Court to require Defendant to file and serve a written report of compliance, and if Defendant fails to do so, take the extreme action of authorizing a U.S. Marshal to visit Defendant's premises and destroy all references to the Nailush mark. (*Id.*) CWL also seeks attorneys' fees and costs in the amount of $28,058.55. (*Id.*) Nailush has not responded to this motion.

## II. STANDARD

Federal Rule of Civil Procedure 55(b)(2) allows the Court, upon plaintiff's motion, to enter default judgment against a defendant that has failed to plead or otherwise defend a claim for

affirmative relief. The Court should accept as true all well-pleaded factual allegations in the complaint by virtue of the defendant's default except for those allegations pertaining to damages. *Chanel, Inc. v. Gordashevsky*, 44 F. Supp. 2d 532, 536 (D.N.J. 2008) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). The Court also does not adopt Plaintiff's *legal* conclusions because whether the facts set forth an actionable claim is for the Court to decide. *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013).

While the decision to enter default judgment is left principally to the discretion of the district court, there is a well-established preference in the Third Circuit that cases be decided on the merits rather than by default judgment whenever practicable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Consequently, the Court must address many issues before deciding whether a default judgment is warranted in the instant case. If the Court finds default judgment to be appropriate, the next step is for the Court to determine a proper award of damages.

## III. DISCUSSION AND ANALYSIS

### A. Appropriateness of Default Judgment

#### 1. *The Court's Jurisdiction*

First, the Court must determine whether it has both subject matter jurisdiction over Plaintiff's cause of action and personal jurisdiction over defendants. *See U.S. Life Ins. Co. in N.Y.C. v. Romash*, No. 09-3510, 2010 WL 2400163, at *1 (D.N.J. June 9, 2010). In this case, the Court plainly has subject-matter jurisdiction because CWL asserts trademark infringement and unfair competition claims under the Lanham Act, 15 U.S.C. § 1121. *See* 28 U.S.C. §§ 1331 and 1338. This Court also has supplemental jurisdiction over CWL's New Jersey state law claims for trademark infringement and unfair competition. *See* 28 U.S.C. § 1367(a).

This Court has personal jurisdiction over Nailush in the form of general jurisdiction. For a corporation, the paradigm forum for the exercise of general jurisdiction is "one in which the corporation is fairly regarded as at home," such as the place of incorporation or principal place of business. *Daimler AG v. Bauman*, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2853–54, 180 L.Ed.2d 796 (2011)). Here, Defendant is regarded as at home in New Jersey because its principal place of business and place of incorporation are both in New Jersey. (*See* Compl. ¶ 2.) Furthermore, Plaintiff served its complaint on Defendant in the forum at its place of business in New Jersey, providing a basis for exercising personal jurisdiction. *See, e.g.*, *Erwin v. Waller Capital Partners, LLC*, No. 10–3283, 2010 WL 4053553, at *3 (D.N.J. Oct. 14, 2010) (exercise of personal jurisdiction proper where the plaintiff served defendant at his New Jersey residence).

2. *Entry of Default*

Second, the Court must ensure that the entry of default under Rule 55(a) was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when that party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." In this case, Nailush has failed to appear with proper representation or otherwise defend this action. Accordingly, the Clerk appropriately issued the entry of default under Rule 55(a) on May 1, 2017.

3. *Fitness of Nailush to be Subject to Default Judgment*

Third, the Court will confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment. *See* F.R. Civ. P. 55(b)(2); 50 U.S.C. App. § 501 *et seq.* (2006) (codification of the Servicemembers Civil Relief Act of 2003). In this case, Defendant is a corporate entity and therefore cannot be an infant, incompetent person,

or person in military service exempted from default judgment. Thus, the Court finds that Nailush is subject to default judgment under Rule 55(b)(2).

### *4. CWL's Cause of Action*

Fourth, the Court must determine whether Plaintiff's complaint states proper causes of action against Defendant. In performing the inquiry into a cause of action, the Court accepts as true a plaintiff's well-pleaded factual allegation while disregarding its mere legal conclusions. *See Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 58-59 (3d ed. 1998)).

Federal trademark infringement and unfair competition are measured by the same standard,[1] *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir. 1999). New Jersey state law claims for trademark infringement, N.J.S.A. 56:3-13.16, and unfair competition, N.J.S.A. 56:4-2, are so similar to federal standards that courts consider them together for purposes of evaluating liability. *See Axelrod v. Heyburn*, No. 09–5627, 2010 WL 1816245, at *3 (D.N.J. May 3, 2010); *Zinn v. Seruga*, No. 05–3572, 2009 WL 3128353, at *27–*28 (D.N.J. Sept.28, 2009); *N.V.E., Inc. v. Day*, No. 07–4283, 2009 WL 2526744, at *2 (D.N.J. Aug.18, 2009).

---

[1] Section 32(1)—setting forth the standard for trademark infringement—of the Lanham Act provides:
>   Any person who shall, without the consent of the registrant—
>>   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which *such use is likely to cause confusion*, or to cause mistake, or to deceive; ... shall be liable in a civil action by the registrant....

15 U.S.C. § 1114(1) (emphasis added).
The same standard is embodied in section 43(a) of the Lanham Act, governing unfair competition claims. That section provides:
>   Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device ... or any false designation of origin . . . which—
>>   (A) *is likely to cause confusion*, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of [his or her] goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added).

6

This Court will thus evaluate whether CWL states a proper cause of action for all of its claims—federal and state trademark infringement and unfair competition—at the same time.

To prevail on its trademark infringement and unfair competition claims, CWL must prove that: (1) its mark is valid and legally protectable; (2) the LUSH mark is owned by CWL; and (3) Nailush's use of the mark is likely to create confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210-11 (3d Cir. 2000). A certificate of registration issued by the USPTO is "sufficient to establish the first and second elements of trademark infringement and unfair competition claims." *E.A. Sween Co., Inc. v. Deli Exp. Of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D. N.J. 2014). CWL has proven the first two factors—that the LUSH mark is valid, legally protectable, and owned by CWL—by presenting the certificates of registration issued by the USPTO for the LUSH mark. (*See* Compl. Ex.'s A-G.)

Marks "are confusingly similar if ordinary consumers would likely conclude that [the two] share a common source, affiliation, connection or sponsorship." *A & H Sportswear, Inc.*, 237 F.3d at 216 (quoting *Fisons Horticulture v. Vigoro Indus.*, 30 F.3d 466, 477 (3d. Cir. 1994)). Although there are ten factors a court may use to assess the likelihood of confusion,[2] if "the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d. Cir. 1983); *see also A & H Sportswear, Inc.*, 237 F.3d at 214 ("If products are directly competing, and the marks are clearly

---

[2] Where appropriate to the factual situation, a court may consider: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market." *A & H Sportswear, Inc.*, 237 F.3d at 212 (citing *Lapp*, 721 F.2d 460, 463).

7

very similar, a district judge should feel free to consider only the similarity of the marks themselves."). Indeed, the first and most important factor is "the degree of similarity between the owner's mark and the alleged infringing mark." *E.A. Sween Co., Inc.*, 19 F. Supp. 3d at 569. Even if there is some difference between the marks, if the infringing mark appropriates the entire mark but adds a descriptive word, a likelihood of confusion may exist. *See, e.g.*, *Lapp*, 721 F.2d 460, 463 (finding "Lapp" and "Lapp Cable" identical for practical purposes).

Here, CWL has shown that it and Nailush deal in competing goods and services because they both sell skincare and nailcare products (*See* Compl. ¶¶ 7, 17), and offer similar nail salon and spa services in the same geographic area. (*See* Compl. ¶ 22). Looking at the marks, LUSH and Nailush are clearly very similar. Nailush appropriates the entire LUSH mark, merely adding three letters to it.

Even though this Court is not required to consider factors other than the similarity between the marks, *A & H Sportswear, Inc.*, 237 F.3d at 214, this Court will also consider the only other factor applicable to the limited factual record in this case: "the strength of the owner's mark." *Id.* at 212 (citing *Lapp*, 721 F.2d 460, 463). "Stronger marks receive greater protection" because they are more readily recognized by a consumer, so "a similar mark is more likely to cause confusion." *A & H Sportswear, Inc.*, 237 F.3d at 222. The strength of the mark is measured by "(1) the mark's distinctiveness or conceptual strength (the inherent features of the mark) and (2) its commercial strength (factual evidence of marketplace recognition)." *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 472 (3d Cir. 2005).

A mark's distinctiveness is determined by reference to four classifications, from least to most distinctive: "(1) generic (such as 'DIET CHOCOLATE FUDGE SODA'); (2) descriptive (such as 'SECURITY CENTER'); (3) suggestive (such as 'COPPERTONE'); and (4) arbitrary or

fanciful (such as 'KODAK')." *A & H Sportswear, Inc.*, 237 F.3d at 221. While "[s]uggestive marks require consumer imagination, thought, or perception to determine what the product is," arbitrary or fanciful marks "bear no logical or suggestive relation to the actual characteristics of the goods." *Id.* at 221-22 (quoting *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296-97 (3d Cir. 1986). LUSH is neither descriptive of the products sold and services offered, nor is it generic. The word "lush" has two meanings: luxuriantly growing grass or vegetation (e.g. "lush greenery"); and something that is "very rich [] providing great sensory pleasure" (e.g. "lush orchestrations").[3] LUSH's distinctive character is strongly suggestive because it requires an active imagination to determine what the product is: natural whole-ingredient bath and beauty products and spa services. But LUSH is not arbitrary or fanciful because bears a logical relation to the characteristics of the bath and beauty products it sells: the products are made with "wholesome ingredients" related to the idea of "lush vegetation," and presumably provide the consumer with a pleasurable sensory experience. LUSH is a suggestive and conceptually strong mark.

CWL has presented the following factual evidence of its marketplace recognition to support its commercial strength. CWL has over one hundred retail stores operating in the United States (Compl. ¶ 7), including ten in New Jersey and five in Pennsylvania (Compl. ¶ 1.) CWL, operating under the LUSH mark, is one of the most well-known, innovative and creative retailers of bath and beauty products and services in the United States and around the world as it has been mentioned over 24,000 times in the United States media. (Compl. ¶ 11.) LUSH is a commercially strong mark.

---

[3] Lush, *English Oxford Living Dictionaries* (2017), https://en.oxforddictionaries.com/definition/lush (accessed Nov. 3, 2017).

Because it is both a conceptually and commercially strong mark, LUSH is so readily recognizable by consumers, such that a similar mark, like Nailush, is even more likely to cause confusion. Both factors indicate that ordinary consumers would likely conclude that LUSH and Nailush are affiliated. CWL has pleaded factual allegations sufficient to establish that LUSH is valid and legally protectable, owned by CWL, and Nailush's use is likely to create confusion. As a result, the Court finds that CWL has stated a proper cause of action for trademark infringement and unfair competition under the Lanham Act, N.J.S.A. 56:3-13.16, and N.J.S.A. 56:4-2.

5. *Emcasco Factors*

Finally, the Court must consider the so-called *Emcasco* factors when determining whether to enter default judgment. The Court considers: (1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default. *Bridges Fin. Grp., Inc. v. Beech Hill Co., Inc.*, No 09-2686, 2011 WL 1485435, at *3 (D.N.J. Apr. 18, 2011) (citing *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987))). The Court finds that all three factors favor granting default judgment.

First, there is no showing, either from the defendant or from the facts alleged in the complaint, that Nailush has a cognizable defense to CWL's claim for trademark infringement. Second, because Nailush has failed to appear with proper representation as ordered by this Court and has otherwise failed to defend this action, CWL suffers prejudice if it does not receive a default judgment. CWL has no alternative means of vindicating its claim against Nailush, particularly in light of CWL's repeated attempts to settle this matter out of court since November 2015. *Ramada Worldwide Inc. v. Courtney Hotels USA, Inc.*, No. 11–896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012) ("If a default judgment is not entered, [plaintiff] will continue to be harmed because it

10

will not be able to seek damages for its injuries due to defendant's continuing refusal to participate in this case."). Third, Nailush's failure to respond with proper representation permits the Court to draw an inference of culpability on their part. *See Surdi v. Prudential Ins. Co. of Am.*, No. 08-225, 2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008) (citing *Palmer v. Slaughter*, No. 99-899, 2000 WL 1010261, at *2 (D. Del. July 13, 2000)). Therefore, the *Emcasco* factors weigh in favor of entering default judgment. CWL is entitled to a default judgment against Nailush.

**B. Damages**

CWL seeks $1 in actual damages under the Lanham Act, 15 U.S.C. § 1117(a), because although it would be entitled to recover Nailush's profits and the damages it sustained as a result of Defendant's infringement, those amounts are extremely difficult to ascertain without a response from Nailush. Since CWL's potential damages are certainly more than $1, the Court will award $1 in nominal damages for Nailush's Lanham Act violations.

**C. Attorneys' Fees and Costs**

CWL requests attorneys' fees and costs in the amount of $28,058.55. In "exceptional" cases, the Court may award reasonable attorneys' fees under the Lanham Act. 15 U.S.C. § 1117(a). A case is exceptional when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014). Whether the losing party's "litigation position or litigation tactics" are exceptional is evaluated on a case-by-case basis, considering the totality of the circumstances. *Id.* Although a finding of culpability is no longer required under *Fair*

*Wind Sailing* to award attorneys' fees,[4] the losing party's culpability "may play a role in [this Court's] analysis of the 'exceptionality' of a case." *Id.*

Nailush has neither taken a position in this litigation, nor has it actually litigated this case. Indeed, its failure to litigate necessitated this opinion granting a default judgment. Prior to *Fair Wind Sailing*, district courts granting default judgment in trademark infringement cases awarded attorneys' fees when the defendant was culpable because it continued to infringe on plaintiff's trademark after it received the complaint. *See Coach, Inc. v. Ocean Point Gifts*, Civ. A. No. 09-4215 (JBS), 2010 WL 2521444, at *8 (D.N.J. June 14, 2010); *E.A. Sween Co., v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 578 (D.N.J. 2014).

Here, Nailush has litigated this case in an unreasonable manner because it both *failed* to litigate and acted culpably by continuing its infringement of CWL's trademark long after it had knowledge that its mark was confusingly similar to LUSH. The USPTO found its mark confusingly similar over two years ago. CWL sent Nailush a cease and desist letter in November of 2015, further informing Nailush of its infringement. Nailush not only ignored the USPTO and CWL's first cease and desist letter, it also ignored at least three other attempts by CWL to resolve this matter out of court. It then ignored CWL's complaint, all the while continuing to use the Nailush mark. Because Nailush has acted culpably by continuing to infringe on LUSH long after it received notice of its infringement, attorneys' fees and costs will be awarded to CWL.

Before attorneys' fees may be awarded, however, this Court must determine whether they are reasonable. *See* 15 U.S.C. § 1117(a). The Supreme Court has determined that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably

---

[4] In *Fair Wind Sailing* the Third Circuit overruled its threshold requirement of culpability for awarding attorneys' fees in exceptional cases under the Lanham Act in light of the Supreme Court's opinion in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). 764 F.3d 303, 315.

expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of this calculation is called the lodestar, *id.*, which is assumed to yield a reasonable fee, *Washington v. Philadelphia Cnty. Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557 (1992)). The party seeking attorneys' fees may establish reasonableness by submitting affidavits setting forth hours worked and its claimed rates. *See Apple Corps. Ltd.*, 25 F. Supp. 2d at 485. "[T]he court has wide discretion" to determine whether the number of hours reported are reasonable, *id.*, and whether the claimed rates are in accordance with prevailing market rates in the relevant community, *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 4665 U.S. 886, 895 (1984)). Although Mr. Clifford has submitted an affidavit declaring the reasonableness of his fees, he has not specified his hours or rates, so this Court cannot determine whether they were reasonable. Mr. Clifford must therefore submit a second affidavit detailing the hours worked and rates claimed.

### D. Injunctive Relief

Plaintiff requests the equitable relief of a permanent injunction. The Lanham Act allows courts to grant injunctive relief to prevent trademark infringement. 15 U.S.C. § 1116(a). To justify granting a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

"[O]nce the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (quoting *Opticians*

*Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990). Since the likelihood of confusion has been established, CWL has suffered an irreparable injury.

CWL has not even attempted to prove it has suffered monetary damages because without the participation of Defendant, calculating those damages is impossible. Monetary damages also cannot compensate CWL for the injury to its reputation or prevent future trademark infringement. *Louis Vuitton v. Mosseri*, 2009 WL 3633882 at *5; *See also Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (stating when there is potential for future harm there is no adequate remedy at law). Thus, a remedy at law is inadequate to compensate CWL.

The balance of hardships weighs in favor of CWL. If this Court does not issue an injunction, then Nailush will continue to infringe on CWL's trademark, resulting in loss of reputation and profits. If this Court does issue an injunction, however, the only hardship suffered by the Defendant is that it must comply with the Lanham Act. *See Louis Vuitton v. Mosseri*, 2009 WL 3633882 at *5 (citing *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882–83 (S.D. Ohio 2007).

Finally, the public has an interest in trademark protection so that the public interest will not be disserved by issuing a permanent injunction that protects a trademark from infringement. The Third Circuit has held that the public interest is served by granting a permanent injunction in the closely analogous copyright protections context. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir.1983) ("Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections . . .") (quoting *Klitzner Indus., Inc. v. H.K. James & Co.*, 535 F. Supp. 1249, 1259–60 (E.D. Pa.1982).

Accordingly, the Court will grant the request for a permanent injunction against Defendant.

**IV. CONCLUSION**

For the reasons stated above, CWL's Motion for Default Judgment against Nailush is **GRANTED**. The Court awards damages in the amount of $1.00 plus attorneys' fees and costs to be determined after Mr. Clifford submits an affidavit detailing hours and rates. The Court further orders injunctive relief, whose terms will be in the order accompanying this opinion.


Dated: 11/06/2017              s/ Robert B. Kugler
                               ROBERT B. KUGLER
                               United States District Judge